UNITED STATES of America, Plaintiff,

v.

Joseph G. FLEMING, Elinor Fleming, Nancy A. Codello, as Executrix of the Estate of Bartholomew Ruggiero, Deceased, New York State Tax Commission, New York City Department of Finance and Royal Indemnity Company, Defendants.

No. 77 Civ. 3969(MP).

United States District Court, S. D. New York.

Aug. 13, 1979.

6. Id. at 1451.

Robert B. Fiske, Jr., U. S. Atty., S. D. New York by Nancy E. Friedman, Asst. U. S. Atty., New York City, for the United States.

Robert Abrams, Atty. Gen. of the State of New York by Marion R. Buchbinder, Asst. Atty. Gen., New York City, for State Tax Commission.

Allen G. Schwartz, Corp. Counsel, by Gale Zareko, C. Roche, and Charles Himmelman, New York City, for New York City.

## DECISION

POLLACK, District Judge.

The plaintiff, United States of America, moves for summary judgment in its favor under Fed.R.Civ.P. 56. The only defendants that oppose the motion are the State and the City of New York. For the reasons shown hereafter, the motion will be granted in part.

This is an action under § 7403 of the Internal Revenue Code to enforce four Federal Tax Liens against the defendants Joseph and Elinor Fleming. Also lodged against the Flemings are three New York State tax warrants, one New York City tax warrant, one judgment, and one security interest in certain valuable coins owned by the Flemings.

The United States now moves to foreclose upon the valuable coins and for a determination of the order of priority in which the competing claimants are to be paid from the proceeds of the sale of the coins.

Judgment by default has been taken against the Flemings. Neither the defendant Codella, holder of the security interest in the coins, nor the defendant Royal Indemnity Company, holder of the judgment against Mr. Fleming, has contested the motion of the United States or asserted any right to the proceeds of the sale. Both the State and the City, however, do assert a right to be satisfied out of the proceeds.

The parties agree on the following facts:

1. On September 30, 1970, the State filed with the Westchester County Clerk a tax warrant against Mr. Fleming for $8,643.18.

2. On January 6, 1971, the City issued a tax warrant against Mr. Fleming for $440.00, and on January 22, 1972, that warrant was filed with the Westchester County Clerk.

3. On June 5, 1972, the Internal Revenue Service assessed a tax liability of $4,578.30 for 1971 against Mr. and Mrs. Fleming. A notice of a lien for this assessment was filed with the Westchester County Clerk on October 10, 1972. A payment of $3,095.00 was made against this assessment, leaving an assessed balance of $1,483.30.

4. On August 4, 1972, the State filed with the Westchester County Clerk a tax warrant against Mr. Fleming for $3,474.94.

5. On March 5, 1973, the IRS assessed a tax liability of $13,779.56 for certain quarters of 1966, 1967 and 1968 against Mr. Fleming. A notice of a lien for this assessment was filed with the Westchester County Clerk on May 8, 1973.

6. On May 7, 1973, the IRS assessed a tax liability of $6,491.05 for 1972 against Mr. and Mrs. Fleming. A notice of a lien for this assessment was filed with the Westchester County Clerk on December 31, 1973.

7. On December 6, 1973, a judgment for $3,068.78 was entered in court against Mr. Fleming in favor of the defendant Royal Indemnity Company as subrogee. On February 5, 1974, this judgment was filed with the Westchester County Clerk.

8. Between January and May, 1974, the Flemings purchased valuable coins for $25,-000. To do so they borrowed $25,000 from Bartholomew Ruggiero, now deceased, on March 1, and May 3, 1974, and pledged the coins to Ruggiero to secure the loan. The defendant Codella is the Executrix of Ruggiero's estate.

9. On May 12, 1975, the IRS assessed a tax liability of $5,218.38 for 1974 against Mr. and Mrs. Fleming. A notice of a lien for this assessment was filed with the Westchester County Clerk on June 3, 1975.

10. On September 10, 1975, the State filed with the Westchester County Clerk a tax warrant against Mr. Fleming for $2,561.02.

In order to compete for priority with a federal tax lien, a local lien must be "choate," that is, "the identity of the lienor, the property subject to the lien, and the amount of the lien" must be established. *United States v. New Britain,* 347 U.S. 81, 84, 74 S.Ct. 367, 369, 98 L.Ed. 520 (1954). All three State warrants identified the lienor as the State Tax Commission of the State of New York; the property subject to the lien as "the real and personal property in said county [Westchester] belonging to said debtor and the debts due to him at the time when said copy of this warrant is so docketed in the office of the Clerk of such county or at any time thereafter"; and the amounts of the liens as stated above. The City warranted identified the lienor as the City of New York Finance Administration; the property subject to the lien in virtually the same language used in the State warrants; and the amount of the lien as $440.00. Language of the generality used in the State and City warrants satisfies the requirement of choateness. *United States v. Vermont,* 377 U.S. 351, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964).

The State warrants were issued pursuant to § 692 of the New York Tax Law, which governs warrants for personal income tax and provides in pertinent part:

(d) . . . Any sheriff or officer or employee who receives a warrant under subsection (c) shall within five days thereafter file a copy with the clerk of the appropriate county. The clerk shall thereupon enter in the judgment docket, in the column for judgment debtors, the name of the taxpayer mentioned in the warrant, and in appropriate columns the tax or other amounts for which the warrant is issued and the date when such copy is filed; *and such amount shall thereupon be a binding lien upon the real, personal and other property of the taxpayer to the same extent as other judgments duly docketed in the office of such clerk.*

(e) . . . *When a warrant has been filed with the county clerk the tax commission shall, in the right of the people of the state of New York, be deemed to have obtained judgment against the taxpayer for the tax or other amounts.* (Emphasis added.)

The United States argues that under the italicized portion of § 692, the lien created by a tax warrant is to be treated in every respect as a lien of a judgment creditor.

Under N.Y.C.P.L.R. § 5202(a), the lien of a judgment creditor on personalty arises when the "creditor has delivered an execution to a sheriff." In tax cases, the warrant takes the place of the execution: "[t]here is no need for the state to issue another paper called an execution." *Corrigan v. United States Fire Insurance Co.,* 427 F.Supp. 940, 943 (S.D.N.Y.1977). The sheriff must return the execution within 60 days of its issuance. C.P.L.R. § 5230(c). When he does so, the judgment creditor's lien is extinguished, *International Ribbon Mills Ltd. v. Arjan Ribbons, Inc.,* 36 N.Y.2d 121, 124, 365 N.Y.S.2d 808, 810, 325 N.E.2d 137, 138 (1975), unless the duration of the execution is extended in writing, C.P.L.R. § 5230(c). Thus, the United States concludes, the State's liens expired 60 days after the warrants were filed because the warrants were never renewed.

The State argues that its lien was not extinguished after 60 days. It relies on three cases, *Hyams v. New York State Tax Commission* (Sup.Ct. Queens Co., June 5, 1974) (unreported); *Marine Midland Bank—Central v. Gleason,* 47 N.Y.2d 758, 417 N.Y.S.2d 458, 391 N.E.2d 294 (1979) (memorandum); and *In re Thriftway Auto Rental Corp.,* 457 F.2d 409 (2d Cir. 1972).

In *Hyams* the State filed a warrant on August 18, 1967, and the United States assessed a tax liability on September 29, 1967. The United States argued that the mere filing of the warrant did not give the State a lien on the taxpayer's personalty. The Court disagreed, holding that the filing of a warrant caused "a lien upon personalty to exist." Slip op. at 5. Here the United States admits that the filing of the State warrants created liens, but argues that the

liens expired after 60 days. The Court in *Hyams* did not address the issue of expiration, since the competing liens of the United States in that case arose within 60 days after the filing of the State warrants.

In *Marine Midland Bank—Central v. Gleason, supra,* the New York Court of Appeals interpreted Tax Law § 1141(b), which governs warrants for sales and use taxes. That section provides in part:

[Upon docketing of the warrant by the clerk] the amount of such warrant so docketed shall become a lien upon the title to and interest in real and personal property of the person against whom the warrant is issued. The sheriff shall then proceed upon the warrant, in the same manner, and with like effect, as that provided by law in respect to executions issued against property upon judgments of a court of record and for services in executing the warrant he shall be entitled to the same fees, which he may collect in the same manner.

The Court of Appeals held that the lien created by the docketing of a warrant issued under this section did not expire for failure to renew after 60 days. *See also In re United Casket Co.,* 449 F.Supp. 261 (E.D. N.Y.1978), *aff'd mem.,* No. 78–5019 (2d Cir. July 16, 1979). The Second Circuit reached the same conclusion in interpreting New York City's tax-warrant statute, which is virtually identical to § 1141(b). *In re Thriftway Auto Rental Corp., supra.*

▪▪▪ The United States points out correctly that § 1141(b) provides flatly that "the amount of such warrant . . . shall become a lien," whereas § 692(d) provides that "such amount shall thereupon be a binding lien . . . to the same extent as other judgments." The phrase "to the same extent as other judgments" could plausibly be interpreted to refer to the duration of the lien, as the United States urges. The phrase could as well be interpreted, however, to refer not to the duration of the lien but rather to the extent of the debtor's property that the lien binds. The interpretation urged by the United States would encumber the collection of income taxes with the need to renew unsat-

isfied warrants every 60 days. That interpretation would also impute to the Legislature the anomalous intention of creating a lien of indefinite duration for the collection of sales and use taxes, but a lien of only 60 days, albeit renewable, for the collection of personal income taxes. The Court therefore adopts the latter interpretation of the phrase "to the same extent as other judgments" and accordingly concludes that the liens created by the State's warrants have not expired.

By the time the Flemings acquired the valuable coins, there existed three Federal liens, two State liens, and one City lien on their property. All of these liens covered after-acquired property. *Glass City Bank v. United States*, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56 (1945); C.P.L.R. § 5201(b); *In re Estate of Robbins*, 74 Misc.2d 793, 346 N.Y.S.2d 86 (Sur.Ct. Suffolk Co.1973). Relying on *United States v. Graham*, 96 F.Supp. 318 (S.D.Cal.1951), *aff'd mem.*, 195 F.2d 530 (9th Cir.) *cert. denied*, 344 U.S. 831, 73 S.Ct. 36, 97 L.Ed. 647 (1952), the United States argues that its liens have priority.

In *Graham,* the United States filed tax liens against the debtor. Thereafter the debtor leased certain land and equipment to the State. Sometime after the federal liens were established but before the State was to make payment to the debtor under the lease, the debtor failed to pay his State taxes. When the time came for the State to pay under the lease, it set off the debtor's unpaid State taxes against its payment. Noting that "[n]o set-off could arise until such time as there existed something to be set-off against," *id.* at 321, the Court held that the Federal lien bound the entire payment due to the debtor and primed the State set-off. Thus *Graham* decided that a Federal lien was prior to a State interest that arose at the same time as the debtor's interest; it did not decide the priority of Federal and State liens that both arose before the debtor's interest.

▪ In *United States v. New Britain, supra,* the Supreme Court concluded that where, as here, Congress did not enumerate the priority of competing liens, their priority should be determined by the common-law rule. As to property of the debtor in existence at the time the liens arose, the common-law rule is " 'the first in time is the first in right'." *Id.,* 347 U.S. at 85, 74 S.Ct. at 370. As to after-acquired property, the rule is that judgment liens in existence when the debtor acquired the property are to be satisfied *pro rata* out of that property. *Hulbert v. Hulbert,* 216 N.Y. 430, 440, 111 N.E. 70 (1916); *Estate of Robbins, supra* ; 67 A.L.R. 1301.

▪ Accordingly, the coins owned by the Flemings will be ordered sold. The proceeds of the sale will be used to satisfy, *pro rata,* the State warrants filed September 30, 1970, and August 4, 1972, the City warrant filed January 22, 1972, and the Federal assessments made June 5, 1972, March 5, 1973, and May 7, 1973. Any proceeds remaining after all of these liens are satisfied in full will be applied first to satisfy in full the Federal assessment made May 12, 1975, and thereafter to satisfy the State warrant filed September 10, 1975.

Settle judgment accordingly.

SO ORDERED.