Bruce J. McDERMOTT and Betty McDermott, Plaintiffs,

v.

ZIONS FIRST NATIONAL BANK, N.A., Defendant–Appellee,

United States of America, By and Through Internal Revenue Service, Defendant–Appellant.

No. 90–4023.

United States Court of Appeals, Tenth Circuit.

Oct. 2, 1991.

William S. Estabrook, Atty., Tax Div., Dept. of Justice, Washington D.C. (Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen and James H. Love, Attys., Tax Div., Dept. of Justice, Washington, D.C., with him on the brief, Dee V. Benson, U.S. Atty., Salt Lake City, Utah, of counsel), for defendant-appellant.

T. Richard Davis of Callister, Duncan & Nebeker, Salt Lake City, Utah, for defendant-appellee.

Before TACHA and SETH, Circuit Judges, and BRATTON, Senior District Judge.*

BRATTON, Senior District Judge.

Plaintiffs, Bruce and Betty McDermott, brought this interpleader action to determine priority in the proceeds of a sale of real property. Zions First National Bank (Zions) claims a lien arising out of a judgment by a Utah state court against the McDermotts. The competing lien of the United States is a federal tax lien claimed by the Internal Revenue Service on behalf of the United States (IRS). Both parties moved for summary judgment, and the district court granted summary judgment in favor of Zions. The IRS has appealed; we affirm.

## I.

█ Zions obtained its judgment for $67,977.67 against the McDermotts on June 22, 1987, and properly docketed the judgment in Salt Lake County on July 6, 1987. The lien attached to all of the McDermotts' real property and after-acquired property located in the county.[1] The IRS filed its Notice of Federal Tax Lien on September 9, 1987. Its lien attached to all of the McDermotts' owned and after-acquired real and personal property.[2] On September 23, 1987, the McDermotts acquired title to certain real property in Salt Lake County to which they already had a buyer, Bob Hansen. There is no evidence in the record that either Zions or the IRS attempted to execute on its lien prior to this time. However, in order to obtain title insurance for the property and complete the sale to Mr. Hansen, the title insurance company required the McDermotts to obtain releases from Zions and the IRS.

Accordingly, the parties entered into an escrow agreement in which Zions and the IRS released their claims to the real property itself but reserved their rights to the cash proceeds of the sale. In the agreement, the parties addressed the issue of priority by providing:

> The respective priorities of the parties to the cash proceeds shall be identical to the priorities of the respective liens of the parties as they existed against the real property as of September 23, 1987, after Bruce J. McDermott successfully bid and purchased the property at the Trustee's Sale, notwithstanding the change in form of the collateral.

The agreement also required the McDermotts to institute this interpleader action so that a court could determine who was entitled to priority in the net proceeds.[3]

█ The McDermotts were not strangers to the property they acquired. In 1981 they had entered into a Uniform Real Estate Contract (UREC) to sell this property to Ron Christensen and Gary Carter (C & C). Pursuant to the terms of the UREC, C & C paid $191,000.00 cash to the McDermotts and agreed to pay the balance of the purchase price monthly. The McDermotts accepted from C & C a Trust Deed Note in the amount of $146,000.00 and a Trust Deed securing the Note with C & C's interest in the property and C & C's interest was conveyed to the Trustee. Legal title to the property, however, remained with

---

* Howard C. Bratton, Senior District Judge of the United States District Court for the District of New Mexico, sitting by designation.

1. The relevant portion of the Utah statute provides:

   From the time the judgment of the district court or circuit court is docketed and filed in the office of the clerk of the district court of the county it becomes a lien upon all the real property of the judgment debtor, not exempt from execution, in the county in which the judgment is entered, owned by him at the time or by him thereafter acquired during the existence of said lien.

   Utah Code Ann. § 78–22–1 (1953).

2. The federal tax lien is a "lien in favor of the United States upon all property and right to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321 (1954). The lien also applies to after-acquired property. *Glass City Bank v. United States*, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56 (1945) (interpreting Section 3670 of the Internal Revenue Code, the predecessor of 26 U.S.C. § 6321).

3. The McDermotts originally brought the action in state court. The United States removed to federal court pursuant to 28 U.S.C. § 1442(a)(1). We have jurisdiction pursuant to 28 U.S.C. § 1291.

the McDermotts.[4]

C & C defaulted on their obligations under the Trust Deed Note in early 1986. Before the Trustee could hold a sale of the property, C & C assigned their interest in the UREC to C & C Investments. C & C Investments subsequently filed a petition for bankruptcy, and a pending sale was stayed. During the bankruptcy proceedings, the McDermotts gave C & C time to find a buyer for the property and, as consideration, released their interest in the UREC. C & C did not find a buyer, and by August 1987 the McDermotts succeeded in getting the property released from the bankruptcy estate and the Trustee noticed the sale. The McDermotts repurchased the property at the sale by submitting a credit bid and assuming an underlying mortgage.

## II.

The district court held that Zions had priority because its lien was filed "first in time." The court applied the "first in time, first in right" rule after finding that the liens simultaneously attached to the real property on September 23, 1987. In addition, the court found that in the Escrow Agreement the IRS waived any interest it might have had in the UREC as personalty and the proceeds of that personalty. The court assumed, but did not decide, that the IRS lien had attached to the McDermotts' interest in the real estate contract and that Zions' lien did not.

■ We review a grant of summary judgment by examining the record to determine whether there are any remaining genuine issues of material fact and whether the district court correctly applied the substantive law. We will affirm if any proper ground exists to support the district court's decision. *United States v. State of Colo.,* 872 F.2d 338, 339 (10th Cir.1989); *Setliff v. Memorial Hosp. of Sheridan County,* 850 F.2d 1384, 1391–92 (10th Cir.1988). Our review is *de novo. Croft v. Harder,* 927 F.2d 1163, 1164 (10th Cir.1991). In this

case there are no facts in dispute and we find that the district court was correct that Zions' lien had priority over the IRS lien. However, as we explain in Part IIIB of this opinion, we differ from the district court in that we apply Congressional and regulatory directive, rather than the common law rule of "first in time, first in right."

## III.

In this appeal, the IRS argues it did not waive its claim to the McDermotts' interest in the UREC and therefore it should have priority because its lien attached to the UREC before Zions' lien attached to the real property. In the alternative, the IRS argues it has priority because Zions' lien was not "choate" at the time the IRS filed its Notice of Tax Lien as the McDermotts did not yet own the real property at issue. Finally, the IRS claims that, if nothing else, it should share pro-rata in the fund. We will address each argument in turn.

## A.

■ The Escrow Agreement provided that

"[t]he monies placed in escrow shall be in lieu of all legal and equitable rights of the IRS and Zions to the real property releases [sic] by them as part of this agreement. Neither party hereto waives any rights, defenses and claims that they may have had or any of them may have had in any interest in and to the real property, such rights being reserved and shall apply to the cash proceeds being held in escrow in substitution of the subject real property."

The construction of a contract is a question of law for the court. *Resort Car Rental System, Inc. v. Chuck Ruwart Chevrolet, Inc.,* 519 F.2d 317, 320 (10th Cir.1975). We agree with the district court that the plain language of the agreement shows that both Zions and the IRS intended to attach their liens to a particular piece of real

---

4. Under the doctrine of equitable conversion, a real estate contract acts to transfer equitable title to real estate to the buyer, while legal title remains with the seller. *Butler v. Wilkinson,* 740 P.2d 1244, 1255 n. 5 (Utah 1987).

property, the subject of the sale to Mr. Hanson.[5]

### B.

■ Often, the first question to be addressed in a case involving priority of a federal tax lien is whether or not the taxpayer has rights in particular property to which the federal lien could attach. That question is resolved by state law. *See, e.g., Aquilino v. United States,* 363 U.S. 509, 512–13, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960); *Bigheart Pipeline Corp. v. United States,* 835 F.2d 766, 767 (10th Cir.1987). However, in this case the parties removed the state law issue of property rights by implicitly agreeing in the Escrow Agreement that their lien would attach to certain real property owned by the McDermotts. Accordingly, the only issue remaining is the priority of the two competing liens.

■ Federal law determines priority between federal tax liens and state-created liens. *United States v. Equitable Life Assurance Soc'y of the U.S.,* 384 U.S. 323, 328, 86 S.Ct. 1561, 1564, 16 L.Ed.2d 593 (1966); *Allan v. Diamond T. Motor Car Co.,* 291 F.2d 115, 116 (10th Cir.1961). Under federal law, judgment lien creditors are among certain creditors who have priority over federal tax liens when their liens are fully perfected and "choate" prior to the filing of the federal government's Notice of Tax Lien. 26 U.S.C. § 6323(a); 26 C.F.R. § 301.6323(h)–1(g); *see also United States v. Pioneer Am. Ins. Co.,* 374 U.S. 84, 89, 83 S.Ct. 1651, 1655, 10 L.Ed.2d 770 (1963). All other creditors have priority over federal tax liens if their liens were fully perfected and choate before the federal tax lien arose at the time of assessment. *United States v. City of New Britain,* 347 U.S. 81, 85–86, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954); 28 U.S.C. § 6322.[6]

---

5. Whatever interest in real or personal property the McDermotts had prior to September 23, 1987, was not crucial to the decision below, and we do not make that decision here. The district court based its ruling on the fact that the parties entered an agreement indicating that their liens would attach to particular real property owned by the McDermotts after September 23, 1987. We do note, however, that prior to a 1990 decision of the Utah Court of Appeals, now pending on certiorari in the Utah Supreme Court and contrary to the district court's assumption, it was not clear in Utah whether or not a judgment lien could attach to a vendor's interest in a real estate contract. In *Cannefax v. Clement,* 786 P.2d 1377 (Utah App.), *cert. granted,* 795 P.2d 1138 (1990), the Utah Court of Appeals held for the first time in Utah that a vendor in a real estate contract had no property rights to which a state judgment lien could attach. The dissent in *Cannefax* disagreed with the majority and referred to a statement in an earlier Utah Supreme Court opinion indicating that a judgment lien could attach to a vendor's interest in a real estate contract. *Id.* at 1383–91 (Bullock, J. dissenting) (quoting *Butler v. Wilkinson,* 740 P.2d 1244, 1258 (Utah 1987)). The district court's decision is dated January 17, 1989, prior to *Cannefax.* Furthermore, the McDermotts appear to have released their interest in the UREC during the bankruptcy proceedings. Of course, the federal lien may have also attached to the McDermotts' beneficial interest in the Trust Deed, but that point has never been argued by the IRS.

6. Congress has accorded judgment creditors priority over unfiled tax liens since 1913. Act of March 4, 1913, ch. 166, 37 Stat. 1016. Prior to this law, federal tax liens, which arise upon assessment, were secret liens that prevailed over all other subsequent creditors. *See generally* Plumb, Federal Liens and Priorities—Agenda for the Next Decade, 77 Yale L.J. 228, 229 (1967). The original priority statute protected purchasers, mortgagees and judgment creditors. In 1939, the statute was amended to include pledgees. Revenue Act of 1939, § 401, 53 Stat. 882. The current statute, enacted in 1966, protects purchasers, holders of security interests, mechanic's lienors, and judgment lien creditors. The statute provides: "The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary." 26 U.S.C. § 6323(a) (1966).

The Supreme Court originated the doctrine of "choate" liens in *Spokane County v. United States,* 279 U.S. 80, 49 S.Ct. 321, 73 L.Ed. 621 (1929), in the context of priority of liens where the debtor was insolvent. The Court extended the doctrine in *United States v. Security Trust & Sav. Bank, Executor,* 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950), to priority contests between federal tax liens and liens not named in the priority statute recited above, where the debtor was solvent. Finally in *United States v. Pioneer Am. Ins. Co.,* 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963), the Court held that liens mentioned in the priority statute also needed to be choate in order to prime a filed federal tax lien. *See generally* Kennedy, *From Spokane County to Vermont: The Campaign of the Federal Government Against the Inchoate Lien,* 50 Iowa L.Rev. 724 (1965).

■ Whether or not a lien is choate is a federal question. *United States v. Security Trust & Sav. Bank, Executor,* 340 U.S. 47, 49–50, 71 S.Ct. 111, 113, 95 L.Ed. 53 (1950). For a prior lien on *all* of a person's real or personal property to take priority over a federal tax lien, the lien must be "perfected in the sense that there is nothing more to be done to have a choate lien—when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *City of New Britain,* 347 U.S. at 84, 74 S.Ct. at 369; *see also United States v. Vermont,* 377 U.S. 351, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964).

The Treasury Department has incorporated the judicially-created "choateness" doctrine into its definition of "judgment lien creditor" for purposes of 26 U.S.C. § 6323(a).

> The term "judgment lien creditor" means a person who has obtained a valid judgment, in a court of record and of competent jurisdiction, for the recovery of specifically designated property or for a certain sum of money. In the case of a judgment for the recovery of a certain sum of money, a judgment lien creditor is a person who has perfected a lien under the judgment on the property involved. *A judgment lien is not perfected until the identity of the lienor, the property subject to the lien, and the amount of the lien are established.* Accordingly, a judgment lien does not include an attachment or garnishment lien until the lien has ripened into judgment, even though under local law the lien of the judgment relates back to an earlier date. If recording or docketing is necessary under local law before a judgment becomes effective against third parties acquiring liens on real property, a judgment lien under such local law is not perfected with respect to real property until the time of such recordation or

docketing. If under local law levy or seizure is necessary before a judgment lien becomes effective against third parties acquiring liens on personal property, then a judgment lien under such local law is not perfected until levy or seizure of the personal property involved. The term "judgment" does not include the determination of a quasi-judicial body or of an individual acting in a quasijudicial capacity such as the action of State taxing authorities.

*See* 26 C.F.R. § 301.6323(h)–1(g) (emphasis added). *Cf. United States v. Acri,* 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1955) (attachment lien not choate because fact and amount of lien contingent); *Security Trust,* 340 U.S. at 50, 71 S.Ct. at 113 (attachment lien "merely a *lis pendens* notice that a right to perfect a lien exists").

■ The IRS does not argue that Zions' lien falls within any of the exceptions noted in the regulation other than that at the time the IRS filed its notice "the property subject to the lien had not been established." Although the Supreme Court has not addressed this particular situation— where the IRS and the judgment creditor are clearly claiming after-acquired property, we believe that *United States v. Vermont,* 377 U.S. 351, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964), stands for the proposition that a non-contingent, or choate, lien on all of a person's real property, perfected prior to the federal tax lien, will take priority over the federal lien, regardless of whether after-acquired property is involved.

In *United States v. Vermont,* Vermont and the United States held almost identical tax liens, arising upon assessment, upon all the taxpayer's real and personal property. Vermont's lien arose October 21, 1958, and the federal lien arose February 9, 1959. After the federal lien arose, Vermont attempted to reach certain funds owing to the taxpayer and held by a bank.[7] *Id.* at

---

In the Federal Tax Lien Act of 1966, Congress specifically altered the choateness doctrine with respect to certain transactions. *See* 26 U.S.C. § 6323(b)–(e); *Donald v. Madison Indus., Inc.,* 483 F.2d 837, 840 (10th Cir.1973).

7. Because the state lien was not one mentioned in 26 U.S.C. § 6323, the Court determined the federal priority by the date of assessment and demand, not by the date of notice filing. *United States v. Vermont,* 377 U.S. at 353 n. 3, 84 S.Ct. at 1268 n. 3.

352–53, 84 S.Ct. at 1268. The United States argued, as it argues here thirty years later, that a state-created lien had to attach to specific property in order for it to take priority. *See id.* at 355, 84 S.Ct. at 1269. The Supreme Court, while noting that the federal lien would take priority if the debtor were insolvent,[8] ruled that because Congress provided no special rules for priority of tax liens arising under section 6321, the basic rule of "first in time, first in right" would apply. *Id.* at 357–58, 84 S.Ct. at 1271. The Court went on to hold that even though both liens were general, both were equally perfected as to all the taxpayer's property and were choate. *Id.* at 358–59, 84 S.Ct. at 1271–72. Therefore, when both governments attempted to satisfy their liens with the same property, the government whose lien arose first, Vermont, would take priority. *Id.* at 354, 359, 84 S.Ct. at 1269, 1272.

Just as Vermont's lien was choate and entitled to priority, Zions' lien was choate and entitled to priority. Zions' lien was not contingent, it was docketed, specific in amount, and fully enforceable against any real property owned by the McDermotts in Salt Lake County during the pendency of the lien. We agree with the cases cited by Zions interpreting *Vermont* to apply to property acquired by the debtor after perfection of the lien as well as to property owned by the debtor at the time the lien was perfected. *See State of Wis. v. Bar Coat Blacktop, Inc.*, 640 F.Supp. 407, 414 (W.D.Wis.1986); *McAllen State Bank v. Saenz*, 561 F.Supp. 636, 639 (S.D.Tex.1982); *United States v. Fleming*, 474 F.Supp. 904, 906 (S.D.N.Y.1979). *See also* Plumb, Federal Tax Liens 134–35 (3d ed. 1972) ("the typical general judgment lien on 'all' the debtor's real property seems safe from later tax liens").

The IRS has not referred us to any federal authority for the rule it proposes. The only court of appeals case cited by the IRS, *MDC Leasing Corp. v. New York Property Insurance Underwriting Assoc.*, affirms a district court opinion holding that an assignment of insurance proceeds not reduced to judgment is not sufficiently choate to prime a federal tax lien. 603 F.2d 213 (2d Cir.1979), *aff'g without opinion* 450 F.Supp. 179 (S.D.N.Y.1978). The district court, in dictum, had stated that because the liens attached simultaneously to the after-acquired proceeds the federal tax lien would take priority. *MDC Leasing Corp.*, 450 F.Supp. at 181. The authority for that proposition was *United States v. Graham*, 96 F.Supp. 318 (S.D.Cal.1951), *aff'd sub nom. State of California v. United States*, 195 F.2d 530 (9th Cir.), *cert. denied*, 344 U.S. 831, 73 S.Ct. 36, 97 L.Ed. 647 (1952). The *Graham* holding rested on the fact that the state's right to set-off was not choate and could not prime the federal tax lien. Again in dictum, the court stated without citing to any authority that federal liens are superior to simultaneously attaching interests. *Id.* at 321. The dicta from these cases do not support the general proposition that a federal tax lien has priority over a fully choate judgment lien when both liens seek to reach property acquired after the perfection of each lien.

In sum, although the district court's result was correct, we believe the problem is more properly analyzed under the federal priority statute, 26 U.S.C. § 6323(a), the Treasury Department's definition of "judgment lien creditor" found at 26 C.F.R. § 301.6323(h)–1(g), and the Supreme Court's definition of a choate lien. There was no need to resort to the federal common law rule of "first-in-time, first-in-right," because Congress has made clear in section 6323(a) and its predecessors that judgment lien creditors who perfect their liens before the filing of a federal tax lien have priority.

---

**8.** The federal government had absolute priority in situations where the debtor was insolvent and his property was in the hands of a receiver. Rev.Stat. § 3466, 31 U.S.C. § 191 (R.S. 3466). For any prior creditor to take priority he would have had to attach specific property, reduce it to possession, and have it removed from the control of the receiver. *See United States v. City of New Britain*, 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954); *United States v. Gilbert Assoc., Inc.*, 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071 (1953). It was in the context of R.S. 3466 that the Supreme Court originated the choateness rules. See footnote 6.

## C.

Finally, the IRS presents *Southern Rock, Inc. v. B & B Auto Supply*, 711 F.2d 683 (5th Cir.1983), as authority for its suggestion that it share pro-rata in the proceeds with Zions. *Southern Rock* involved two liens which were *perfected* simultaneously. The IRS and the secured creditor filed their notice and financing statement at exactly the same time. *Id.* at 684. Because the court could find no cases involving simultaneous perfection (as opposed to simultaneous attachment), the court applied the common law and let the two claimants share pro-rata in a fund consisting of proceeds from accounts receivable. *Id.* at 689. Accordingly, *Southern Rock* is not precedent for us to ignore the clear priority of Zions' judgment lien.

In *United States v. Fleming*, 474 F.Supp. 904 (S.D.N.Y.1979), the court was presented with competing city, state, and federal tax liens seeking to reach after-acquired personal property (gold coins). After finding that the non-federal liens were indeed choate, *id.* at 906, the court incorrectly looked to state law and held that the proceeds of the sale of the coins should be distributed pro-rata between the claimants. *See id.* at 908. However, the law is clear that once a taxpayer's rights in property are determined, the consequences which flow from those rights are to be determined by federal law. *Aquilino v. United States*, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); *United States v. Cache Valley Bank*, 866 F.2d 1242, 1244 (10th Cir.1989). The federal law is either the common law rule "first in time, first in right," *City of New Britain*, 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1953), or the statutory rule found in 26 U.S.C. § 6323.[9]

## IV.

We realize the importance of the federal government's and indeed the entire citizen-ry's interest in collecting our taxes. However, "[t]he purpose of [section 6323(a)] is to prevent secret tax liens from being effective against named classes of claimants to a delinquent taxpayer's property." *Marteney v. United States*, 245 F.2d 135, 140 (10th Cir.1957). The federal tax lien in this case was "secret" on July 6, 1987, when Zions became a judgment lien creditor entitled to the protection of section 6323(a). Zions' lien was perfected and choate within the meaning of the statute, the regulation, and the case law as to all the McDermotts' real property. Accordingly, the IRS lien was not "valid" as to Zions' judgment lien.

The judgment of the United States District Court for the District of Utah is AFFIRMED.

**9.** The IRS includes the *Fleming* case in its brief, but not to show that the proceeds should be divided pro-rata. Instead, the IRS tells us that *Fleming's* holding that the local liens were choate should be disregarded because the court erred in relying on state law. We note that the court correctly relied on *United States v. Vermont* to find that the liens were indeed choate and erred only in applying state law to the priority question.