**PITTSBURGH NATIONAL BANK, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 78–1409.**

United States District Court, W. D. Pennsylvania.

Sept. 30, 1980.

Anthony P. Picadio, Donald L. Very, Tucker, Arensberg, Very & Ferguson, Pittsburgh, Pa., for plaintiff.

James R. Hall, Jr., Tax Division, U. S. Dept. of Justice, Washington, D. C., Robert J. Cindrich, U. S. Atty., Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

DIAMOND, District Judge.

On September 14, 1977, the Internal Revenue Service [IRS] served notice of levy upon Pittsburgh National Bank [PNB] to seize monies held in a delinquent taxpayer's bank account. PNB, claiming superior right to the funds, commenced this action for wrongful levy pursuant to 26 U.S.C. § 7426 and 28 U.S.C. § 1340. Presently before the court are cross–motions for summary judgment based on, inter alia, the following stipulated facts.

From March 1975, until September 14, 1977, the taxpayer maintained a checking account with PNB. On March 17, 1975, PNB loaned the taxpayer $10,400, and he signed a ninety–day note which the parties renewed at the end of each ninety–day period until it expired on September 12, 1977. The terms of the note included a provision wherein, as security for his outstanding loan, the taxpayer gave the bank a lien on all monies which he had on deposit with it in an amount equal to the unpaid balance of the indebtedness evidenced by the note.[1]

---

1. The relevant portion of the loan agreement provided:

> The undersigned gives to the holder hereof a lien and security interest for the amount of any and all obligations of the undersigned to the holder hereof, upon ... monies of the undersigned, which may at any time be delivered .. [to] the holder hereof. ... [A]t the

On March 24, 1975, the IRS assessed a tax lien upon all of taxpayer's "property and rights to property." On September 14, 1977, the IRS served notice of levy on PNB, at which time the taxpayer owed the bank a balance of $7,400 on the March 17, 1975, loan and had deposits on hand at PNB of $2,514.97.

PNB contends that under Pennsylvania law the taxpayer's account at the time of the notice of levy on September 14, 1977, constituted neither the property nor the rights to property of the taxpayer and therefore was not subject to levy and seizure by the IRS. To evaluate this theory, we consider the nature of the government's power to assess tax liens and to enforce those liens through levy.

The Internal Revenue Code creates a tax lien upon "all property and rights to property" of a taxpayer who, being "liable to pay any tax neglects or refuses to pay the same after demand ...." 26 U.S.C. § 6321. To enforce this lien, the IRS may levy "only ... property possessed and obligations existing at the time thereof." 26 U.S.C. § 6331(b). The focus, thus, is on the taxpayer's property interests at two distinct times: (1) taxpayer's property at time of assessment for purpose of priority and (2) taxpayer's property at the time of an attempt to enforce a lien through levy.[2]

■■■ Establishing that property held by a third party is in fact the property of the taxpayer obviously is crucial to the government's successful distraint of that property. "Although the tax *lien* will apply to after–acquired property, the *levy* will apply only to such property or property rights as actually exists at the time the levy is made." (emphasis supplied) 9 J. Mertens, Law of Federal Income Taxation ¶ 54.52 (1977 revision). Thus, since the government served notice upon a third party, PNB, that it must surrender the taxpayer's property which it held on September 14, 1977, it is necessary to determine whether the taxpayer had an ownership interest in this property on that day. Since the government can at best succeed to the property rights of the taxpayer, obviously the rights of the government vis–a–vis the garnishee bank can rise no higher than those of the taxpayer. *St. Louis Trust Co. v. United States*, 617 F.2d 1293 (8th Cir. March 11, 1980); *Wagner v. United States*, 573 F.2d 447 (7th Cir. 1978). Finally, although by federal law, i. e., the Internal Revenue Code, the government succeeds to the taxpayer's property interests against the garnishee, the question of just what property interests the taxpayer in fact possesses vis–a–vis garnishee is determined by state, rather than federal law. *Aquilino v. United States*, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960).

■■■ Under Pennsylvania law, the applicable state law here, a borrower may contract with a lending bank to pledge the borrower's deposits in that bank as security for his outstanding loan. It has long been the law in Pennsylvania that where a demand note exceeds the debtor's deposits in which the bank has been given a security

---

option of the holder hereof, any of the following described events may be treated as a default, thereby causing this and all other obligations of the undersigned to the holder hereof to become immediately due and payable without any demand or notice whatsoever ... c) the creation of any other lien, or the issuance of any attachment, against the property of, or the entry of judgment against, the undersigned.

2. The tax assessment is an administrative determination that the taxpayer has, in the judgment of the IRS, outstanding back taxes due. To enforce this assessment, the Internal Revenue Code authorizes the government to secure its collection of taxes through a lien upon all of taxpayer's then existing property and all his after acquired property in an amount to satisfy the unpaid tax debt. The government's lien establishes its security interest in taxpayer's property wherever found. Levy is an attempt to execute for collection purposes on specific property of the taxpayer. Thus, the government must first establish that the person levied upon has property of the taxpayer before it can be determined that the government has a priority in the proceeds of the taxpayer's property. 9 J. Mertens, Law of Federal Income Taxation, ‛‛ 54.38, 54.52 (1977 revision)

**104**

interest, the bank may setoff, at anytime against the note, the debtor's deposits on hand. *Duffy v. Building and Loan Association*, 325 Pa. 127, 189 A. 307 (1937); *Aarons v. Public Service Building and Loan Association*, 318 Pa. 113, 178 A. 141 (1935); *General Electric Credit Corp. v. Tarr*, 457 F.Supp. 935 (W.D.Pa.1978). And the Pennsylvania Supreme Court has held that this right of setoff actually extinquishes the "depositor's rights to draw on the deposit leaving nothing 'belonging to' defendant (depositor)." *Aarons, supra* 318 Pa. at 116, 178 A. at 142. The Pennsylvania Supreme Court has further stated that:

> [t]he bank [is] not required to make book entries charging one account and crediting the other before asserting its right to priority. The Defalcation Act has been in force for more than 200 years, since 1705. The effect of this statute and of the doctrine of set–off is to extinquish by operation of law all but the balance due between the debtor and creditor. *Duffy, supra*, 325 Pa. at 130–1, 189 A. at 309.

■■ The fact that the bank in the case *sub judice* chose not to exercise the right of setoff at the time the debt exceeded the . security does not prejudice the bank's right of setoff. *Tarr, supra* at 938. The bank's right of setoff amounts to no more than an open–ended credit arrangement. Monies that the depositor has withdrawn, which, considering the outstanding balance of the loan, are in excess of "deposits" in the bank constitute an unsecured loan. The money on deposit is under the sole control of the bank, which may, at anytime without notice terminate this credit arrangement and deny a request for credit made by the depositor–debtor through his checks drawn on the bank. Since in the case at bar the taxpayer's obligation to the bank was secured by a demand note which matured on September 12, 1977, PNB's right to the monies on

deposit as of that date was vested by operation of law, and the bank's lien on that date automatically extinquished the taxpayer's right to the deposit.[3]

The government's equity in the PNB account is indistinguishable from the equity the government acquired in the property interest of a North Carolina general contractor in the balance due on a building contract after the taxpayer–general contractor became delinquent in his payments to subcontractors. In that case, *United States v. Durham Lumber Co.*, 363 U.S. 522, 525–6, 80 S.Ct. 1282, 1284, 4 L.Ed.2d 1371 (1960), the Supreme Court concluded that:

> since under North Carolina law the taxpayers possessed merely a right to the residue of the fund, and since the Government's tax lien attached to the property interests of the taxpayer as defined by state law, the Government can recover only "so much of the construction price as will remain unpaid after the owners have deducted a sum sufficient to pay the subcontractors." [*Durham, supra*] 257 F.2d at 575.

■ Since at no time once the debt had matured could the taxpayer in the case *sub judice* have compelled PNB under state law to deliver any of the money on deposit to him, the taxpayer had no property right in the account, and there was nothing to which the government's levy could attach. Cf. *Karno–Smith Co. v. Maloney*, 112 F.2d 690 (3rd Cir. 1940) Accordingly, summary judgment will be entered for the plaintiff.

---

**3.** The government cites a case under Georgia and one under New York law which hold that the taxpayer's interest in the deposition on hand amounts to a property interest to which the lien can attach. *See, United States v. Citizens & Southern National Bank*, 538 F.2d 1101 (5th Cir. 1976); *United States v. Sterling National Bank & Trust*, 494 F.2d 919 (2nd Cir.

1974). However the states of Georgia and New York define a bank's property interest of setoff is inapplicable in the case *sub judice*. Pennsylvania law vests the beneficial interest in deposits held as security for demand loans with the bank. Cf. *United States v. National Bank of Commerce*, 246 F.Supp. 597 (E.D.La.1965) with *Duffy, supra, Aarons, supra.*