STATE OF WISCONSIN, (DEPARTMENT OF REVENUE) Plaintiff,

v.

BAR COAT BLACKTOP, INC., Defendant,

and

CITY OF SCHOFIELD, Garnishee,

v.

UNITED STATES of America and Real Estate Management, Inc., Intervenors.

No. 84–C–884–C.

United States District Court, W.D. Wisconsin.

April 9, 1986.

James D. Harnett, Madison, Wis., for plaintiff.

Arthur L. Eberlein, Wausau, Wis., for Real Estate Mgt. Inc.

Beth A. Sabbath, Tax Division, U.S. Dept. of Justice, Washington, D.C., for U.S.

Raymond Thums, Schofield, Wis., for City of Schofield.

John Kelley, Wausau, Wis., for Bar Coat Blacktop.

## ORDER

CRABB, Chief Judge.

In cross motions for summary judgment, the State of Wisconsin and the United States Internal Revenue Service ask the court to determine which of the parties has priority of interest in certain funds seized by the Wisconsin Department of Revenue in a state court garnishment proceeding.

A brief procedural history of the dispute is as follows: On September 13, 1983, the Wisconsin Department of Revenue filed a garnishment action in the Circuit Court for Marathon County, Wisconsin to collect on final state tax warrants entered against Bar Coat Blacktop, Inc., naming the City of Schofield, Wisconsin as garnishee. In July, 1984, after the State of Wisconsin had obtained judgment in the garnishment proceeding in the Marathon County court, Real Estate Management, Inc. and the United States Internal Revenue Service filed motions to intervene in the action as competing creditors. The Marathon County court granted the motions on October 11, 1984. The United States removed the action to this court on November 7, 1984.

Since the removal of the action, all of the parties with the exception of the United States and the State of Wisconsin have been dismissed pursuant to stipulation.

On April 23, 1985, the parties stipulated that the garnished funds held in the custody of the Marathon County court be transferred to the custody of the clerk of this court pending the resolution of this dispute. As of the date of this order, the funds have not been transferred to this court.

From the parties' stipulated proposed findings of fact, and for the sole purpose of deciding these motions, I find that there is no genuine dispute about the following material facts.

## FACTS

Between October 1, 1981 and August 3, 1983, the Wisconsin Department of Revenue made six state tax assessments against Bar Coat Blacktop, Inc. After making each assessment, the department filed a delinquent tax warrant-judgment with the clerk of the Marathon County court with respect to that assessment.[1]

Between June 14, 1981 and February 20, 1984, the Internal Revenue Service made five assessments against Bar Coat Blacktop, Inc. for federal taxes. Subsequent to each of the assessments, the Internal Revenue Service filed notices of a federal tax lien with the Wisconsin Secretary of State and with the Register of Deeds of Marathon County.[2]

On June 29, 1983, Bar Coat Blacktop, Inc. submitted a bid for a paving contract to the City of Schofield, Wisconsin. The City of Schofield accepted the bid on August 10, 1983.

On September 13, 1983, the State of Wisconsin filed a garnishment summons and complaint in the Circuit Court for Marathon County, naming Bar Coat as defendant and the City of Schofield as garnishee. In an order dated November 1, 1983 and entered November 4, 1983, the Marathon County court directed the City of Schofield to remit a sum of $24,490.94 to the Wisconsin Department of Revenue and discharged

---

1. A list of the state assessments and warrant judgments, as provided by the parties in their proposed findings of fact, is attached to this order as Exhibit A.

2. A list of the federal assessments and levies, as provided by the parties in their proposed findings of fact, is attached as Exhibit B.

the City of Schofield from Bar Coat's demands for that sum.[3]

On June 7, 1984, the Internal Revenue Service served a notice of levy on the City of Schofield relating to the federal tax liabilities of Bar Coat.[4]

## OPINION

In their cross motions for summary judgment, the parties assert differing views of the issues in this case and the factors controlling the priority of interest to the funds in question.

The State of Wisconsin contends that its filing of the state court garnishment action and the final judgment in that action established the state's right to the garnished funds and placed those funds beyond the reach of the subsequently served federal levy. The state argues that the general federal tax liens based on assessments made prior to the commencement of its garnishment action against Bar Coat either did not attach to the specific property subject to that action or are subordinate to the interests of the State of Wisconsin. Also, the state contends that the November 4, 1983 order of the Marathon County court divested Bar Coat of the funds garnished by the state, leaving no property for the federal government to reach in its June 7, 1984 notice of levy. The state further argues that funds held in custody of the state court following final judgment in a garnishment proceeding may not be reached by federal tax levy.

The state has two additional arguments that are equitable in nature: first, it maintains that but for the diligence of the Wisconsin Department of Revenue in initiating a garnishment proceeding to collect on delinquent state taxes, the City of Schofield would have paid its debt to Bar Coat and there would have been no action in which the federal government could have intervened; and second, it argues that the federal government's wrongful levy of the funds already garnished by the Wisconsin Department of Revenue violates public policy.

For its part, the federal government views the case as a matter of competing state and federal tax liens, and asserts that neither the commencement of the state garnishment proceedings nor the entry of final judgment therein is sufficient to establish priority to the funds at issue. The United States bases its claim to the funds at issue in this case not upon the notice of levy, which it maintains is merely an administrative device to seize property, but upon the perfected liens which created a right to that property, contending that the state could assert priority over the federal government only if the state had become a judgment lien creditor before the filing of the federal tax liens. It claims priority to the disputed funds on two interrelated grounds:

(1) the federal tax lien upon Bar Coat's property became choate on August 10, 1983, when the City of Schofield's accept-

3. Attached to the State of Wisconsin's brief in support of its cross motion for summary judgment are two letters written by Raymond Thums, counsel for the City of Schofield. The first letter, dated January 18, 1984, and addressed to James Harnett, counsel for the State of Wisconsin, indicates that by that date the City of Schofield had paid the Wisconsin Department of Revenue the amount required by the garnishment judgment, but was withholding payment of the balance of its debt pending the resolution of a dispute with Bar Coat over Bar Coat's claims for payment. In the second letter, dated June 13, 1984, Thums informed Jeffrey R. Henry of the Internal Revenue Service that because of a disagreement about additional work to be performed under the construction contract, it was not until June 7, 1984 that the City

of Schofield approved a final invoice for Bar Coat's performance in the amount of $29,563.41. These letters are unauthenticated documents and inadmissible hearsay, and therefore will not be considered on these motions for summary judgment. Rule 56(e), Federal Rules of Civil Procedure.

4. The record indicates that at some point after a July 11, 1984 hearing on the United States' motion to intervene in this action, the Wisconsin Department of Revenue placed the proceeds of Bar Coat's construction contract in the custody of the Marathon County court. *State of Wisconsin v. Bar Coat Blacktop, Inc.,* No. 83–CV–763, slip op. at 1 (Cir.Ct. Marathon County, Branch IV, Oct. 11, 1984) (order granting United States' motion to intervene).

ance of Bar Coat's bid brought into existence the property subject to the federal tax lien. The United States argues that the state and federal liens attached simultaneously upon the city's acceptance of the construction bid, and that in such a situation, the federal interest prevails;

(2) the Internal Revenue Service filed three notices of lien with the Wisconsin Secretary of State and the Marathon County Register of Deeds before the state had commenced its garnishment action and before that action had ripened into judgment.

Arguing that final judgment has yet to be rendered in this garnishment action, the United States also asserts priority to Bar Coat's unpaid employment taxes for the third quarter of 1983. The United States argues that the filing of notices of federal tax lien provided notice of the Internal Revenue Service's interest in all of Bar Coat's property. The United States denies that its notice of levy was wrongful and maintains that intervention in the state court garnishment proceeding was necessary to avoid a conflicting order concerning the disputed funds.

*The nature of Bar Coat's interest in the garnished funds*

The threshold question in this case is whether taxpayer Bar Coat had a property interest in the money owed to it by the City of Schofield at the time the federal liens arose upon the assessment of federal taxes. Only after it is ascertained that the taxpayer had an interest in the disputed property can the court proceed to consider which party has priority of interest in the property. *United States v. Trigg*, 465 F.2d 1264 (8th Cir.1972).

■ The extent to which a federal tax lien can reach a taxpayer's property depends on the nature of the taxpayer's legal interest in that property. That interest is determined by state law. *Aquilino v. United States*, 363 U.S. 509, 512–513, 80 S.Ct. 1277, 1279–1280, 4 L.Ed.2d 1365 (1960). The general federal tax lien created by 26 U.S.C. § 6321 "creates no property rights but merely attaches consequences, federally defined, to rights cre-

ated under state law." *Avco Delta Corporation of Canada Ltd. v. United States*, 459 F.2d 436, 440 (7th Cir.1972) (quoting *United States v. Bess*, 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135 (1958)). "In other words, the rights of the government rise no higher than those of the taxpayer whose property is sought to be levied upon." *Avco Delta*, 459 U.S. at 441 (citation omitted). *Accord Wagner v. United States*, 573 F.2d 447, 451 (7th Cir.1978). Once it is determined that the federal lien has attached to interests created by state law, the relative priority of the federal lien and competing liens is governed by federal law. *Aquilino*, 363 U.S. at 513–14, 80 S.Ct. at 1280–81.

*The lien stage*

■ The State of Wisconsin argues that the general federal tax liens did not attach to the specific property subject to the garnishment action because under Wisconsin law the state's commencement of the garnishment action left no property for the liens to reach. In support of this argument, the state cites Wis.Stat. §§ 812.-18(1)(a) and 812.19(7), which provide that a garnishee may be held liable for debts that have not yet become due to the defendant and that a court may render judgment on a debt that has not yet matured.

However, I can find no support in these sections for the proposition that a taxpayer loses his property interest in contract rights as soon as those rights become the subject of a garnishment action. The filing of the garnishment action gives the state an equitable lien upon the taxpayer's property, *Elliot v. Regan*, 274 Wis. 298, 79 N.W.2d 657 (1956), that is, a lien that may be satisfied out of debts due or to become due. The action is premised upon the taxpayer's right to collect an amount owed: a right that yields to the superior claims of the garnishor only upon judgment in the action.

The state's reliance on these statutory sections appears to be based in part on its assertion that the City of Schofield's debt

to Bar Coat did not mature until several months after judgment in the garnishment action, when the contract was performed and the total amount owed had been ascertained. The state contends that the federal interest in these specific funds did not attach until after the city's debt had matured, whereas the state had already obtained an interest in the funds by filing its garnishment action to collect them.

There is no competent evidence in the record to indicate when Schofield approved the final bill for Bar Coat's labors. The state cites no provision of state law to indicate when a contractor obtains a property right to payment under a construction contract: whether upon acceptance of the bid, commencement of significant work, or upon satisfactory completion of contractual duties. However, even if I assume that Bar Coat did not have an enforceable contractual right until some time after the state filed its garnishment action, I am unconvinced by the argument that the federal lien attaches only after the property right matures, whereas the state claim attaches at an earlier stage.

■ Federal tax liens arising upon the assessment of taxes attach to all after-acquired property of the taxpayer. *Glass City Bank of Jeanette, Pa. v. United States,* 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56 (1945). The fact that Bar Coat's right to the proceeds of the contract were dependent on its performance of the contract and its acceptance by the city does not affect the federal tax liens. *See Seaboard Surety Co. v. United States,* 306 F.2d 855, 859 (9th Cir.1962). *See also Randall v. H. Nakashima & Co., Ltd.,* 542 F.2d 270 (5th Cir.1976). I conclude that the federal government's liens attached immediately to all Bar Coat's rights under its contract with the City of Schofield when the city accepted Bar Coat's bid on August 10, 1983, approximately one month before the state filed its garnishment action.

The state argues next that even if the federal liens did attach to the specific indebtedness at issue in this case, the state's filing of a garnishment action before the

filing of the federal notice of levy renders the federal government's interest in the debt subordinate to the state's. The relative priority of the state's garnishment lien and the federal tax lien is a question of federal law, *Aquilino v. United States,* 363 U.S. 509, 512–13, 80 S.Ct. 1277, 1279–80, and will be discussed below.

*The levy stage*

■ As a separate basis for its claim to the funds at issue, the state argues that the judgment in the state court garnishment proceeding extinguished Bar Coat's interest in payment under the construction contract, leaving no property for the federal levy to reach. In support of this argument, the State cites *Pittsburgh National Bank v. United States,* 498 F.Supp. 101 (W.D.Pa.1980), *aff'd* 657 F.2d 36, (3d Cir. 1981) for the proposition that a general federal tax lien is insufficient to establish federal priority to funds in a case where a taxpayer's rights to those funds are extinguished by operation of state law before notice of the federal levy is served. In that case, a taxpayer borrowed money from a bank, giving the bank a note that provided that the bank would have a lien on the taxpayer's deposits equal to the unpaid balance of the loan. The demand note securing the debt expired on September 12, 1977. On September 14, the Internal Revenue Service served notice of levy on the bank in an effort to collect on delinquent taxes assessed on March 24, 1975. Under Pennsylvania law, the bank's right to the monies on deposit in the borrower's account vested on September 12, 1977 when the note matured, automatically extinguishing the taxpayer's interest in the deposits.

Citing the language of 26 U.S.C. § 6331(b), which provides that the Internal Revenue Service may levy "only property ... possessed and obligations existing at the time thereof," the district court ruled that the federal levy was ineffective. The court noted that "[a]lthough the tax *lien* will apply to after-acquired property, the *levy* will apply only to such property or property rights as actually exists at the time the levy is made." 498 F.Supp. 101

at 103 (quoting 9 J. Mertens, Law of Federal Income Taxation ¶ 54.52 (1977 revision)).

■■■ The State of Wisconsin argues that just as the taxpayer in *Pittsburgh National Bank* had no property right because he could not compel the bank to deliver his deposits, 498 F.Supp. 101 at 104, Bar Coat had no property right because the November 1, 1983 order of the Marathon County court released the City of Schofield from its obligations to pay Bar Coat for the construction work. However, the state's reliance on *Pittsburgh National Bank* is misplaced. Although the state argues that the federal interest in a taxpayer's property is not perfected until the Internal Revenue Service files a notice of levy, this argument misconceives the purpose and effect of the federal levy. The Internal Revenue Code does not require the federal government to seize personal property in order to secure its interest in that property. "Seizure of personal property is not a method of perfecting the tax lien but rather the means of enforcing an existing lien." 9 J. Mertens, Law of Federal Income Taxation ¶ 54.52 (1977 revision). The federal government perfects its claim to a taxpayer's property by filing notice of its lien. 26 U.S.C. § 6323. Unless the Internal Revenue Service has filed a notice of lien, it will be unable to assert priority over the perfected claim of a competing creditor merely by serving a notice of levy upon a person holding the property of the taxpayer. *Southern Rock, Inc. v. B & B Auto Supply,* 711 F.2d 683, 687 (5 Cir.1983). A levy does not "determine whether the taxpayer actually owes the taxes underlying the assessment, lien or levy; nor does it determine whether the government's rights to the secured property are superior to those of other claimants, such as the taxpayer's other creditors." 4 B. Bittker, Federal Taxation of Income, Estates and Gifts ¶ 111.5.5 (1981).

Unlike *Pittsburgh National Bank,* in which the federal levy failed because the United States had not filed a notice of lien before the state-created property right expired, the present case involves a situation in which the United States had perfected its liens before the competing claimants had done so.[5]

*Funds held in custody of the court*

■■■ As a separate state law basis for its argument that the federal levy was ineffective, the State of Wisconsin argues that funds held in custody of the court cannot be reached by a federal levy. The state cites *Williams v. Smith,* 117 Wis. 142, 145, 93 N.W. 464 (1903), in which the Wisconsin supreme court held that funds "*in custodia legis,* the management and distribution of which are already under the control of the court," could not be reached in garnishment proceedings by competing creditors. The exemption of these funds from garnishment was intended to protect the court from the inconvenience of conflicting orders with respect to funds in its custody. The state also relies on *Welch v. Fiber Glass Engineering, Inc.,* 31 Wis.2d 143, 145–51, 142 N.W.2d 203 (1966), in which the supreme court extended this exemption to funds held in the custody of a court which had entered an order directing disbursement of the funds.

This argument for exemption from federal tax levies of court-held funds is unpersuasive, and irrelevant as well, since the parties' proposed findings of fact contain no indication whether the garnished funds at issue in this case were ever placed in the custody of the state court. I have found as fact only that the Marathon County court ordered the City of Schofield to remit a sum to the State of Wisconsin. It appears from the record that the funds were not paid into court until after the federal government served its notice of levy upon the City of Schofield. Moreover, even if I were to find that the funds were in the custody of the court, I would not conclude that such custody would defeat the perfected liens of the United States.

---

5. *Wagner v. United States,* 573 F.2d 447 (7th Cir.1978), another case the state relies upon, is distinguishable for the same reason: the federal government had not perfected its lien by filing a notice of lien before the competing claimants had perfected their liens.

*Relative priority of the competing federal and state tax liens*

Having concluded that the federal government's general tax liens attached to the property of taxpayer Bar Coat Blacktop, Inc., I turn to the question of the relative priority of the state and federal liens, a question that is governed by federal law. *Aquilino v. United States,* 363 U.S. 509 at 513–14, 80 S.Ct. 1277 at 1280–81. I look first to the statutory bases of the federal and state federal liens.

■■■ The failure of a taxpayer to pay federal taxes gives rise to a general lien in favor of the Internal Revenue Service upon "all property and rights to property" belonging to the taxpayer at the time the assessments are made. 26 U.S.C. § 6321. That lien becomes effective upon the date those taxes are assessed, and continues until liability for the amounts assessed is extinguished. 26 U.S.C. § 6322.

Under Wis.Stat. § 71.13(2m), when a taxpayer fails to pay a tax, the state obtains a general lien upon all of the taxpayer's property, effective on the date the taxes are assessed. The statute provides that

If any person liable to pay any income or franchise tax neglects, fails, or refuses to pay the tax, the amount, including any interest, addition to tax, penalty or costs, shall be a perfected lien in favor of the department of revenue upon all property and rights to property. The lien is effective at the time the taxes are due or at the time an assessment is made and shall continue until the liability for the amount to be paid or for the amount so assessed is satisfied. The perfected lien does not give the department of revenue priority over lienholders, mortgagees, purchasers for value, judgment creditors and pledges whose interests have been recorded before the department's lien is recorded.

■■■ The principle of "first in time, first in right" governs the relative priority of competing state and federal tax liens. *United States v. City of New Britain,* 347 U.S. 81, 85–86, 74 S.Ct. 367, 370–371, 98 L.Ed. 520 (1954). In order to have priority over a federal lien, a competing lien must meet the federal standard of choateness before the federal lien arises. Choateness requires that the identity of lienor, the identity of the property subject to the lien, and the amount of the lien be ascertained. *Id.*

The United States argues that both the Internal Revenue Service and the Wisconsin Department of Revenue identified the amounts of their respective liens when they assessed taxes against Bar Coat, but that neither government's lien became choate until specific property of the taxpayer had been identified. According to the United States, both the federal and state liens became choate when the City of Schofield accepted Bar Coat's construction bid on August 10, 1983. The United States claims all of its liens are entitled to priority under the principle that a tie goes to the federal government.

I find this argument unpersuasive. Both the federal and state liens are general in nature. The fact that they are directed at all of the taxpayer's property rather than specific items of property does not defeat the requirement of choateness. *U.S. v. Vermont,* 377 U.S. 351, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964); *McAllen State Bank v. Saenz,* 561 F.Supp. 636, 639 (S.D.Tex.1982). Both governments' liens were choate upon their assessments of taxes against Bar Coat.

The question is how the federal priority rules apply to specific property that comes into existence after two separate taxing authorities have acquired choate liens upon all of the taxpayer's property. The United States cites a line of cases as support for the proposition that federal tax liens have priority when they attach to property at the same time as other liens, but none of these cases squarely holds that a federal tax lien has priority in such a situation. Furthermore, each of the cases cited by the United States on this issue is inapposite to the facts of the present case.

The simultaneous attachment issue arose as a hypothetical question in *United States*

*v. Graham*, 96 F.Supp. 318, (S.D.Cal.1951), *aff'd sub nom California v. United States*, 195 F.2d 530 (9th Cir.), *cert. denied* 344 U.S. 831, 73 S.Ct. 36, 97 L.Ed. 647 (1952), a case in which the district court held that federal tax liens had priority over a state's purported right to offset taxes owed to it by a taxpayer against the state's debt to the taxpayer because notice of the federal liens had been filed before the state's setoff rights ever accrued. In that case, none of the state taxes involved had been determined or assessed when notices of the federal liens was filed. In dictum, the court observed that in the event the state's interest and the federal tax liens had attached simultaneously, the federal lien would be entitled to priority. 96 F.Supp. at 321. However, the holding in that case is limited to its particular facts. *Accord McAllen State Bank*, 561 F.Supp. 636 at 639.

In *United States v. Meyer*, 346 F.Supp. 554, 557 (S.D.N.Y.1972), another case relied upon by the United States, the court concluded that the facts before it did not present a situation of simultaneous attachment, but if they did, the principle asserted in *United States v. Graham* would apply. The court's holding was that an unperfected security interest was not entitled to priority over perfected federal tax liens. 346 F.Supp. at 557–8.

Finally, the United States cites *MDC Leasing v. New York Property Ins. Underwriting*, 450 F.Supp. 179, 181 (S.D.N.Y. 1978), a case involving the competing claims of the Internal Revenue Service and the assignee of the proceeds of a fire loss insurance policy. In that case, the federal government filed notices of tax liens before the amount of the insurance proceeds was fixed through proof of loss. The court held that the Internal Revenue Service had priority over the assignee because the assignee's interest in the insurance proceeds did not become choate until proof of loss was filed. Citing *United States v. Graham*, the court noted that even if the federal liens were deemed to attach upon proof of loss, when the insurance proceeds came into existence, the federal liens would be entitled to priority because the federal interest and that of the competing creditor attached simultaneously. 450 F.Supp. at 181.

 Unlike the competing creditors in the cases cited by the United States, in this case the Wisconsin Department of Revenue obtained choate and perfected liens upon all of the taxpayer's property by virtue of its assessment of state taxes. The fact that certain specific property of the taxpayer did not come into existence until after the state and federal liens became choate does not alter the priority rules established in *United States v. New Britain.* In such a situation, "there appears to be no legal or policy reason that would mandate a deviation from the first in time, first in right rule." *McAllen State Bank*, 561 F.Supp. at 639.

*Relative priority of the state garnishment lien and the federal tax liens*

 The State of Wisconsin argues that the state has priority of interest in the funds at issue because the state department of revenue filed a garnishment action to collect upon Bar Coat's delinquent taxes before the federal government served notice of its levy. This argument is without merit. The filing of a garnishment action gives rise to an equitable lien upon the property of the taxpayer. *Elliot v. Regan*, 274 Wis. 298, 79 N.W.2d 657. When federal tax liens are recorded before judgment is obtained in a garnishment action, those liens have priority over the equitable lien obtained upon the filing of the garnishment action. *United States v. Liverpool & London & Globe Insurance Co., Ltd.*, 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268 (1955); *United States v. Acri*, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1955).

The state argues that the *Liverpool* case undermines the federal government's position because in that case the federal government filed a notice of levy before judgment had been obtained in the state court garnishment action, whereas in the present case, the federal government did

not file a notice of levy until well after judgment had been entered by the Marathon County court. As noted above, it is notice of lien, not notice of levy, that perfects the federal government's tax lien. 4 B. Bittker, Federal Taxation of Income, Estates, and Gifts ¶ 111.5.5 (1981). The dispositive factor in both *Liverpool* and *Acri* was the federal government's action in filing notices of lien before the competing garnishment liens had ripened into judgment.

*Effect of judgment lien creditor status*

The federal government's contention that the State of Wisconsin could have established priority to the funds at issue in this case only if it had become a judgment lien creditor before the notice of the federal liens was filed is premised upon the validity of the argument that all of the federal liens are superior by virtue of simultaneous attachment. Having concluded that the state's liens were choate upon assessment and that the federal government's simultaneous attachment argument is invalid, I will address the question of judgment creditor status only briefly.

 Originally, federal tax law provided that the federal tax lien had priority over virtually all other general liens perfected after the Internal Revenue Service demanded payment from a delinquent taxpayer, whether or not the competing lienholder had notice of the federal government's claim. *See United States v. City of New Britain*, 347 U.S. 81 at 84–88, 74 S.Ct.

367 at 369–372. Subsequently, Congress extended special protection to certain classes of creditors whose interests were perfected and specific before they received notice of federal tax liens. Under 26 U.S.C. § 6323, a lien arising under § 6321 is not effective against a judgment lien creditor until notice of the lien has been filed. The special protection afforded by judgment creditor status has no bearing upon state liens that are perfected *before* competing federal liens. When the state's lien is prior to that of the federal government, the state has priority whether or not it has taken the additional step of obtaining judgment creditor status with respect to specific property.[6]

*Fairness*

Finally, I address the State of Wisconsin's argument that it would be unfair to grant priority to a general federal tax lien over a state's specific garnishment lien and garnishment judgment. The facts in this case establish that the federal government stated its claim to Bar Coat's property by filing notices of tax lien with the Wisconsin Secretary of State and the Marathon County Register of Deeds. The state was on constructive notice of the federal government's claim to Bar Coat's property before the state filed its garnishment action to enforce collection of Bar Coat's unpaid taxes. A review of the file in this case reveals that the United States did not become aware of the state's garnishment action until after

---

**6.** The United States cites both federal and state law as support for its argument that the Wisconsin Department of Revenue could not obtain judgment creditor status with respect to Bar Coat's contract rights until the department obtained final judgment in its garnishment action.

Treasury Department regulations specify that in order to qualify as a judgment lien creditor, a creditor competing with a federal lien must have "obtained a valid judgment, in a court of record and competent jurisdiction, for the recovery of specifically designated property or for a certain sum of money." 26 C.F.R. § 301.-6323(h)–1(g).

Under Wisconsin law, the docketing of a warrant for delinquent state taxes is treated as a final judgment. Wis.Stat. § 71.13(3)(b). Final judgments create a perfected lien upon real

property, but not upon personal property. Wis. Stat. § 806.15. The United States argues that the state of Wisconsin is required to take additional steps to acquire a judgment lien upon personal property.

The judgment lien procedures do not affect the priority of interests in this case. While the state may not have a perfected judgment lien upon personal property until it obtains judgment in a garnishment action, the state's assessment of taxes against Bar Coat gives rise to a perfected tax lien upon all of Bar Coat's property. Wis.Stat. § 71.13(2m). The state's perfected tax lien establishes its priority of interest against competing creditors. The state court garnishment proceedings are simply the administrative process through which the state enforces its claim to personal property.

judgment had been rendered by the Marathon County court. (Brief of the United States in support of its motion to intervene at 2.) In view of its failure to notify the Internal Revenue Service of its competing claims to Bar Coat's property under these circumstances, the state is poorly situated to argue that the federal levy government's levy and subsequent intervention in the garnishment action were unfair.

| | | |
|---|---|---|
| 1. | Federal lien arising 9/14/81 | $10,139.81 |
| 2. | State lien arising 10/1/81 | 640.57 |
| 3. | State lien arising 10/15/81 | 844.88 |
| 4. | State lien arising 11/25/81 | 2,024.22 |
| 5. | Federal lien arising 12/31/81 | 6,366.61 |
| 6. | State lien arising 1/28/82 | 2,280.08 |
| 7. | Federal lien arising 3/22/82 | 6,366.61 |
| 8. | State lien arising 6/1/82 | 6.00 |
| 9. | State lien arising 8/3/83 | 15,365.82 |
| 10. | Federal lien arising 1/2/84 | 163.20 |
| 11. | Federal lien arising 2/20/84 | 3,491.35 |

## ORDER

IT IS ORDERED that the funds deposited by the City of Schofield with the Marathon County Clerk of Court, plus any accrued interest, be applied to the outstanding liens of the United States and the State of Wisconsin in the following order:

IT IS FURTHER ORDERED that by April 28, 1986 each party shall submit a proposed judgment setting forth the total amount of the fund to which they are entitled according to the priorities set forth herein.

### APPENDIX A

#### STATE TAXES

| TYPE OF TAX | DATE ASSESSED | DATE WARRANT–JUDGMENT FILED IN MARATHON COUNTY | AMOUNT DUE * |
|---|---|---|---|
| Withholding | 10–01–81 | 04–06–82 | $ 640.57 |
| Withholding | 10–15–81 | 05–05–82 | 844.88 |
| Withholding | 11–25–81 | 04–06–82 | 2,024.22 |
| Withholding | 01–28–82 | 08–03–82 | 2,280.08 |
| Sales | 06–01–82 | 08–04–82 | 6.00 |
| Sales | 08–03–83 | 09–08–83 | 15,365.82 |

* Interest computed to November 29, 1984.

### APPENDIX B

#### FEDERAL TAXES

| TYPE OF TAX | TAX PERIOD | ASSESSMENT DATE | DATE LIEN FILED WITH SECRETARY OF STATE OF WISCONSIN | DATE LIEN FILED WITH REGISTER OF DEEDS, MARATHON COUNTY, WISCONSIN | AMOUNT OUTSTANDING AS OF JUNE 7, 1984 |
|---|---|---|---|---|---|
| Employment | 06–30–81 | 09–14–81 | 10–07–81 | 10–07–81 | $10,139.81 |
| Employment | 09–30–81 | 12–21–81 | 01–12–82 | 01–12–82 | 12,889.50 |
| Employment | 12–31–81 | 03–22–82 | 06–14–82 | 06–14–82 | 6,366.61 |
| Employment | 09–30–83 | 01–02–84 | None | None | 163.60 |
| Unemployment | 12–31–81 | 02–20–84 | 05–14–84 | 05–14–84 | 3,491.35 |