KOCH OIL COMPANY, A DIVISION OF KOCH INDUSTRIES, INC., Plaintiff,

v.

Charles R. KING and Irene P. King, Husband and Wife, White and Ellis Drilling, Inc., Abercrombie Drilling, Inc., United States of America, Department of the Treasury, Internal Revenue Service, Defendants.

No. 91–1229–K.

United States District Court,
D. Kansas.

March 27, 1992.

Bradley W. Maudlin, Koch Industries, Inc., Wichita, Kan., for plaintiff.

Marvin R. Appling, Wichita, Kan., for defendants King.

Timothy E. McKee, Triplett, Woolf & Garretson, Wichita, Kan., for defendant White and Ellis Drilling, Inc.

James F. Foster, Wichita, Kan., for defendant Abercrombie Drilling, Inc.

Annette B. Gurney, Asst. U.S. Atty., Wichita, Kan., and James J. Long, Office of Sp. Litigation, Tax Div., Washington, D.C., for defendant U.S.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, Chief Judge.

This is an interpleader action in which the parties have stipulated to the facts. In their cross-motions for summary judgment (Dkt. Nos. 19 & 23), the parties dispute the nature, extent and priority of competing liens in defendant Charles King's property interest.

The plaintiff, Koch Oil Company (Koch), is the purchaser of oil and gas from certain leases in which the defendant, Charles King, owns an interest. Koch filed this interpleader action when it learned of conflicting claims between Abercrombie Drilling, Inc., White and Ellis Drilling, Inc., and the Internal Revenue Service to funds attributable to King's interest in the production purchased by Koch from the oil and gas leases. Pursuant to court order, Koch tendered $119,807.69 in proceeds attributable to King's interest in the various leases to the court registry on October 17, 1991.

On December 15, 1985, Abercrombie Drilling, Inc. (Abercrombie) drilled a well for Associated Petroleum Company, a company solely owned by King.

On September 29, 1986, the United States assessed King for unpaid federal income taxes in the amount of $246,472.00. Thereafter, on December 11, 1986 and June 24, 1987, the United States properly filed notices of a federal tax lien against King for unpaid federal taxes.

Subsequent to filing the notices of federal tax lien, White and Ellis Drilling, Inc. (White & Ellis), drilled a well for King. In consideration for this service, King executed a promissory note in favor of White & Ellis for $18,000.00. As security for the note, King executed a mortgage security agreement on certain oil and gas leasehold interests. White & Ellis recorded and perfected the mortgage and financing statement on July 8, 1988. King also executed a promissory note, a second mortgage and a security agreement to Abercrombie in consideration for the well drilled in 1985. Abercrombie's mortgage on the oil and gas leases was perfected on November 30, 1988.

On July 19, 1989, the United States served a notice of levy upon Koch. Thereafter, on July 25, 1991, White & Ellis obtained a judgment against King.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must resolve all disputed facts in favor of the party resisting summary judgment. *White v. General Motors Corp., Inc.,* 908 F.2d 669, 670 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991). Summary judgment shall be denied if the moving party fails to demonstrate its entitlement beyond a reasonable doubt. *Norton v. Liddel,* 620 F.2d 1375, 1381 (10th Cir. 1980).

The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing of an essential element of the case to which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), *cert. denied,* 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988). In resisting a motion for summary judgment, the nonmoving party may not rely upon mere allegations, or denials, contained in its pleadings or briefs. Rather, the party must come forward with specific facts showing the presence of a genuine issue for trial. *Abercrombie v. City of Catoosa,* 896 F.2d 1228, 1230 (10th Cir.1990). One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53.

In this action, Abercrombie and White & Ellis contend their security interests and mortgages in King's property are superior to the federal tax lien because their interests were perfected before the United States served its notice of levy upon Koch.

Federal law determines the priority status among competing creditors where a federal tax lien is the basis for the government's claim. *Aquilino v. United States,* 363 U.S. 509, 513–14, 80 S.Ct. 1277, 1280–81, 4 L.Ed.2d 1365 (1960); *Liddell v. Board of Educ. of City of St. Louis, Mo.,* 822 F.2d 1446, 1473 (8th Cir.1987). A tax lien arises when the taxpayer fails to pay a

tax liability for which demand has been made, and the lien attaches to all the taxpayer's property or interest in property when the assessment is made. 26 U.S.C. §§ 6321 and 6322. The government perfects its claim to a taxpayer's property by filing notices of its lien. 26 U.S.C. § 6323.

■ Under the facts of this case, it is clear the government's tax lien has priority over Abercrombie's and White & Ellis' security interests. The federal tax lien assessed by the government on September 29, 1986 attached to all of King's property and interests in property, in this case oil and gas leases, on that date. On December 11, 1986 and June 24, 1987, the government filed notices of a federal tax lien on King's property in the appropriate counties. Subsequent creditors, therefore, had constructive notice of the tax lien even though the government had not levied on King's property. *See Rodeck v. U.S.*, 697 F.Supp. 1508 (D.Minn.1988) (federal notice of tax lien filed before state garnishment action provided constructive notice of federal claim).

Abercrombie and White & Ellis contend that although the government filed notices of the tax lien on King's property, it did not levy on the property until after they perfected their claims, thereby entitling them to a superior claim. This argument is misplaced.

■ Certain creditors, including security holders and judgment lien creditors, have priority over federal tax liens when the liens are fully perfected and choate *prior to the filing* of the government's notice of tax lien. 26 U.S.C. § 6323; *McDermott v. Zions First Nat. Bank N.A.*, 945 F.2d 1475, 1479 (10th Cir.1991). In this case, Abercrombie's and White & Ellis' security interests were not perfected until after the government had filed notices of its tax lien on King's property and property interests.

*State of Wis. v. Bar Coat Blacktop, Inc.*, 640 F.Supp. 407 (W.D. Wis.1986), is factually similar to the present case. Therein, the state filed a garnishment action and received a judgment against the debtor after the United States filed notices of tax lien but before it executed a levy on the property. The state argued that its judgment

before the government's execution of levy provided it with a superior claim. The court determined, however, that it was the notice of lien, not the notice of levy, that perfected the government's federal tax lien. *Id.* at 416.

In reaching its conclusion that the federal tax lien had priority over other claims, the court examined the underlying principles of assessments, liens and levy. The court found that a levy did not determine whether the taxpayer actually owed the taxes underlying the assessment; nor did the levy determine whether the government's rights to secured property were superior to those of other claimants. *Id.* at 413. Rather, the court concluded, a levy was merely a means of enforcing an existing lien. *Id.*

■ This court agrees with and adopts the principles espoused in *Bar Coat Blacktop*. The Internal Revenue Code does not require the government to seize property in order to secure its interest therein, because the government's interest is statutorily perfected when it files a notice of tax lien. Accordingly, any subsequent levy against the property is simply a means of enforcing an existing perfected lien.

In this case, Abercrombie and White & Ellis had notice of the federal tax lien on all of King's property and property interests before they entered security agreements with King. Since the federal tax lien was filed and perfected before the creditors perfected their security interests, it has priority. The fact that the government had not levied upon King's property interest when the creditors filed their security interests does not confer priority upon Abercrombie's and White & Ellis' claims, since execution does not determine the underlying property interest rights and is not necessary for perfection of a federal tax lien.

Accordingly, the court concludes that the government's tax lien, filed and perfected June 24, 1987, is superior to any subsequent perfected interest in the same property.

IT IS THEREFORE ORDERED this 27 day of March, 1992, that the United States' motion for summary judgment (Dkt. No. 23) shall be granted.

IT IS FURTHER ORDERED that all interpled funds held by the court registry shall be applied to the outstanding lien of the United States. All other funds which accrue from King's ongoing property interests shall first be applied to the satisfaction of the federal tax lien, and any remaining funds attributable to King's property interests shall be applied to other outstanding debts according to their priority.