## TEXAS COMMERCE BANK–HURST, N.A.

v.

## UNITED STATES of America.

### Civ. A. No. 4–86–69–E.

United States District Court,
N.D. Texas,
Fort Worth Division.

Aug. 25, 1988.

---

Thomas Nezworski, George C. Haratsis, McDonald, Sanders, Ginsburg, Newkirk, Gibson & Day, Fort Worth, Tex., for plaintiff.

Linda C. Groves, Atty., Tax Div., Dept. of Justice, Dallas, Tex., for defendant.

## ORDER

MAHON, District Judge.

Now before the Court are the cross motions for summary judgment to which both parties have responded and replied. After a thorough review of the pleadings and the applicable law, the Court makes the following determination.

## FACTS

C.I. Construction Inc. is a Texas corporation which obtained a loan from Plaintiff Texas Commerce Bank ("TCB") in the amount of $325,000.00. To secure the loan, C.I. Construction executed a note which contained a provision that gave the TCB a "lien and contractual right of set-off in and to all money now in or at any time hereafter coming within such payee's (C.I. Construction) custody and control." In addition, C.I. Construction gave TCB a security interest in "accounts now owned or hereafter acquired" and the proceeds of those accounts. These transactions occurred in November 1982. In December 1982, TCB perfected its security interest in the accounts by filing a financing statement with the Texas Secretary of State's office.

In February 1985, C.I. Construction executed another security agreement in favor of TCB, by which the bank acquired a security interest in "all accounts and accounts receivable ... of whatever nature now owned by Debtor or existing or hereafter acquired ... and all proceeds of the Collateral." During all times relevant to this suit, C.I. Construction maintained two general accounts at TCB.

On August 21, 1985, C.I. Construction entered into a contract with Par Properties No. 1 to construct a shopping center. In payment for work done under this contract, Par Properties remitted a check in the amount of $83,907.00 payable to C.I. Construction and TCB. On January 8, 1986, an employee of C.I. Construction deposited the check in one of the companies' accounts in TCB.

C.I. Construction failed to pay its federal employee taxes for the first and second quarters of 1985. Consequently, on Au-

gust 23, 1985, the I.R.S. filed a Notice of Federal Tax Lien with the Texas Secretary of State in the amount of $33,417.90. On September 24, 1985, the I.R.S. filed another Federal Tax Lien with the Texas Secretary of State's office in the amount of $93,404.53.

Sometime before January 1986, TCB placed an administrative hold on C.I. Construction's accounts because C.I. Construction was delinquent in repaying on the notes with the bank. The administrative hold allows a bank employee to determine whether the bank will honor each check presented for payment from the C.I. Construction accounts. This allowed the bank to closely monitor C.I. Construction's cash position since the funds in the account were collateral on the loan.

During the morning of January 8, 1986, but after the C.I. Construction employee deposited the check, the I.R.S. served a Notice of Tax Levy on TCB seeking the surrender of funds on deposit in C.I. Construction's account. TCB's attorneys informed the I.R.S. agents that the bank believed that it had a superior lien on the money within the accounts. Nevertheless, a TCB employee surrendered all of the funds in the accounts, which totaled $40,233.91 on January 9, 1986.

On January 10, 1987, TCB exercised its right to set-off against the $83,907.00 deposit which C.I. Construction made on January 9, 1986. The I.R.S. became aware of the $83,907.00 check shortly thereafter and sought to levy it.

## DISCUSSION

### I. Right to the $40,233.91

Under section 6321 of the tax code, the Government can obtain a lien on "all property or right of property" of a delinquent taxpayer. Therefore, the Court must decide whether the taxpayer, C.I. Construction, had property right in the $40,233.91 which was in its account at TCB. *Aquilino v. U.S.*, 363 U.S. 509, 512–13, 80 S.Ct. 1277, 1279–80, 4 L.Ed.2d 1365 (1960). This Court must apply state law to determine the interest that a taxpayer has in certain funds.

*Broday v. U.S.*, 455 F.2d 1097 (5th Cir. 1972). If it is determined that the taxpayer has a property right in such funds, then federal law is used to determine the priority of liens on that property or right to property. *Aquilino v. U.S.*, 363 U.S. at 512–13, 80 S.Ct. at 1279–80.

█ Under Texas law, a debtor/creditor relationship exists between the depositor of funds and the bank into which the funds are deposited. *Sears v. Continental Bank and Trust Co.*, 562 S.W.2d 843 (Tex.1977). Although legal title to the funds passes to the bank upon deposit, the depositor has a right to direct the bank on how the funds should be disbursed. *La Sara Grain Co. v. First Nat. Bank of Mercedes*, 673 S.W. 2d 558 (Tex.1984). Since the depositor has a right to direct the disbursement of the funds, it is clear that the depositor has a right to the property.

█ The question now becomes whether the taxpayer lost the right to property when it granted TCB a lien and contractual right of set-off to all money ... coming within the taxpayer's "custody and control" including the funds within the two bank accounts at TCB. The mere existence of a contractual right of set-off, without the exercise thereof, does not relieve the taxpayer of its "right" to property. *See Security State Bank & Trust v. Texas Bank & Trust*, 466 S.W.2d 590, 591 (bank must "*apply* a deposit to an indebtedness due" for taxpayer to lose right to property); Vernon Bus. & Com. § 4303(1). *See also U.S. v. Citizens & Southern Nat. Bank*, 538 F.2d 1101, 1107 (5th Cir.1976) (similar result under Georgia law). However, the exercise of a right of set-off can deprive the taxpayer of its right in the funds which are on deposit in the bank. Unfortunately for TCB, it exercised the right to set-off on January 10, 1986, which was two days after the Government issued its levy. In order for the bank to have an interest superior to that of the Government, the taxpayer must have lost its right to the property prior to the Government issuing its levy.

The summary judgment evidence indicates that TCB placed a "administrative

hold" on the accounts of the taxpayer because of the taxpayer's failure to pay back its loans from the bank. The administrative hold prevented the taxpayer from withdrawing funds without the prior consent of the bank.

■ Thus, the issue for the Court to decide, which is one of first impression, is whether the administrative hold placed on the account was sufficient for the taxpayer to lose its right to the funds in the accounts. The Court finds that it is not.

The placing of an administrative hold on the account does not deprive the depositor of the right to withdraw funds from the account. The administrative hold simply is a means by which the bank prevents the disbursement of funds from the account without a determination from a supervisor. The administrative hold does not prevent the depositor from removing the funds from the account. Rather, it is a means by which the bank decides whether to honor a demand for disbursement by the depositor. The administrative hold is a precatory procedure which a bank may take before deciding to exercise its right to setoff. By exercising a right of setoff, a bank is actually taking money from the account of a depositor and applying it to a debt which the depositor owes to the bank. By placing an administrative hold on an account of a depositor, the bank is not depriving the depositor of the money in the account, but is rather reserving the payment of funds out of the account until a supervisor analyzes the checks presented for payment in light of the reason that the administrative hold is placed upon the account. In fact, in this case, TCB allowed some checks to be paid out of C.I. Construction's account after it placed the administrative hold on the account.

TCB could have exercised its right of setoff prior to the levy of the federal tax lien. By delaying the exercise of that right, TCB risked the possibility of the federal tax lien being levied upon the funds in the depositor's account. The judicial system should not allow the following scenario to occur. On day 1, TCB puts an administrative hold on an account. On day 2, the federal government issues a tax levy. On day 3, TCB exercises its right to setoff and contends that it takes prior to the federal government because placing an administrative hold on an account is equivalent to exercising its right of setoff. By failing to exercise its right of setoff, the bank should incur the risk that a federal tax lien might take priority. *See generally, Rice Inv. Co. v. U.S.*, 625 F.2d 565, 572 (5th Cir.1980).

Since C.I. Construction has a "right" to the $40,233.91 in the account at TCB, the federal tax lien, issued pursuant to section 6321, attached to the money. Therefore, it was appropriate for the Government to obtain the $40,233.91 on January 9, 1985.[1]

II. Rights to the $83,907.00

The second issue for the Court to decide is the rights of the parties in the $83,907.00 check which was made out to TCB and C.I. Construction as joint payees.[2] The starting point for this discussion is 26 U.S.C. § 6323(a) which provides that a "lien imposed by section 6321 shall not be valid as against any ... holder of a security interest ... until notice thereof which meets the requirements of subsection (f) has been

1. Even though the lien imposed under section 6321 is proper, a "holder of a security interest" can have priority over the tax lien under section 6323(a). In this case, TCB is not the "holder of a security interest" in the $40,233.91 which was on deposit in its bank because the requirements for a "security interest" in section 6323(h)(1) were not met. Namely, the interest was not "protected under local law against a subsequent judgment lien arising out of an unsecured obligation." Article 9 of the Texas Business and Commerce clause does not apply to bank deposits (§ 9.104(12)) and no common law theory (i.e. pledge) protects TCB against a subsequent

judgment lien creditor. *Dragstrem v. Obermeyer*, 549 F.2d 20 (7th Cir.1977) (security interest can be protected against subsequent judgment lien creditor under Federal Tax Lien Act under Uniform Commercial Code or other common law theories); *Bullock v. Foster Cathead Co.*, 631 S.W.2d 208 (Tex.Civ.App.1982) (pledge theory).

2. The Court need not consider TCB's argument that the tax lien does not attach to the check because it is made out to TCB as well as C.I. Construction because TCB succeeds on other grounds.

filed by the Secretary." The definition of a security interest is found in 26 U.S.C. § 6323(h)(1) which provides:

The term "security interest" means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

Thus, there are three criteria for TCB to be considered a "holder of a security interest" under the tax code. First, TCB must have protected its security interest against a subsequent judgment lien. Practically, this means that TCB must have perfected its interest under Texas law. TCB did perfect is interest when it filed the financing statement with the Texas Secretary of State in December 1982. Second, TCB must have also "parted with money or money's worth." TCB did this when it loaned money to C.I. Construction. Third, the property on which TCB claims to have a security interest must be "in existence."

The third criteria is the one about which the parties dispute. State law determines whether property is "in existence" for the purposes of section 6323. *Southern Rock, Inc. v. B & B Auto Supply,* 711 F.2d 683, 685 (5th Cir.1983); *Pine Builders, Inc. v. United States,* 413 F.Supp. 77, 81 (E.D.Va. 1976). Under the Texas Business & Commerce Code, " 'Collateral' means the *property* subject to a security interest, and includes *accounts....*" (emphasis added). Tex.Bus. and Com.Code Ann § 9.105(c) (Vernon Supp.1988). " 'Accounts' means any right to payment for ... services rendered which is not evidenced by an instrument or chattel paper, whether or not it

has been earned by performance." *Id.* § 9.106. Since an "account" is a type of "collateral" and "collateral" is considered "property" under Texas law, an "account" is "property" under Texas law. Therefore, the Court finds that an existing "account" is "property ... in existence" for purposes of the Federal Tax Code.[3]

The contract between C.I. Construction and Par Properties is an "account" since the contract provided C.I. Construction with a "right to payment" for services to be rendered, namely the construction of the shopping center. The contract between C.I. Construction and Par Properties came into existence on August 21, 1985 since this is the date on which the contract was signed. Therefore, the contract became "property ... in existence" on August 21, 1985.

■ Since all three requirements were satisfied on August 21, 1985, TCB became the holder of a security interest in the payments under the contract on August 21, 1985. The Government filed its notice of tax lien on August 23, 1985, two days after TCB became the holder of a security interest in the payments under the contract.

Accordingly, section 6323 provides the notice of tax lien is not valid against TCB's interest in the payments under the contract, including the $83,907.00 check.

III. Conclusion

The motions for summary judgment of TCB and the Government are both granted in part. The Government's lien attaches to the $40,233.91. The Government's lien does not attach to the $83,907.00 check.[4]

---

**3.** *Pine Builders, Inc. v. U.S.,* 413 F.Supp. 77, 82 (E.D.Va.1976). "When these contracts were created, that is when the rights to payment for services rendered were established, whether conditionally or absolutely, property of an incorporeal nature came into existence for the

purposes of the ... U.C.C. and, we find, for the purposes of the FTLA."

**4.** The Court finds no merit in the Government's contention that a penalty should be imposed on TCB under 26 U.S.C. 6332(c).